IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ricky Jamison, #239647,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>Lt. Wright and Officer Anderson,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 6:11-2578-MBS-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 55). The plaintiff, who is a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983, alleging constitutional violations involving excessive force and deliberate indifference to a resulting injury. He also seeks the court's supplemental jurisdiction for a state tort claim of assault and battery.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is incarcerated at McCormick Correctional Institution ("MCI"), a division of the South Carolina Department of Corrections ("SCDC"). The alleged incident giving rise to his claims took place on July 26, 2011, while the plaintiff was using a cane and fitted with what he describes as a "colonoscopy tube."[1] On that date, as he was walking from his dorm to MCI's recreation field, he was instructed by Lt. Wright to return to his dorm

---

[1] The medical records submitted by the defendants reveal that the plaintiff has a suprapubic catheter. There is no reference to a colonoscopy tube.

and shave. He did so and then attempted to again walk to the recreation field. Lt. Wright confronted him and told him that he would not be participating in recreation that day. The plaintiff protested, and he was ordered back to his dorm by Lt. Wright. The plaintiff alleges in his complaint that as he turned to go back to his dorm, he was grabbed and held by Officer Anderson while Lt. Wright hit him from behind in the head. They then threw him on the ground and handcuffed him. The plaintiff alleges he told Officer Anderson that he had hold of the tube coming from his stomach and asked him to let go. Officer Anderson instead continued to hold the tube while he yanked the plaintiff off the ground, causing the tube to come out of his stomach . He was then placed in a holding cell before being taken to medical, where he was seen by a doctor and his injury was dressed by a nurse. He states that his tube was surgically replaced at an area hospital approximately eight days later. The plaintiff alleges that after he complained to Associate Warden Parker about the incident and filed a grievance, he was charged with threatening an officer (comp. at pp. 4-6).

The defendants dispute the plaintiff's version of the incident. By way of affidavit, Lt. Wright and Officer Anderson testify that the plaintiff refused to return to his dorm, cursing and swinging his cane aggressively. He was restrained and placed on the floor for control. Both men deny hitting the plaintiff or pulling the tube from his body. The defendants confirm that, after the incident, the plaintiff was charged with threatening to inflict harm and that he was convicted after a disciplinary hearing (Wright aff. ¶¶ 2-8; Anderson aff. ¶¶ 2-9).

Upon initial review of the complaint, the undersigned issued a Report and Recommendation that defendants Associate Warden Parker and Warden Cartledge be summarily dismissed from the case, as the plaintiff had failed to allege any facts to support a claim against them. By Order dated November 15, 2011, the Honorable Margaret B.

2

Seymour, Chief United States District Judge, adopted the Report and Recommendation, and dismissed Parker and Cartledge as defendants.

On February 23, 2012, the remaining defendants Wright and Anderson filed a motion for summary judgment, arguing in part that the plaintiff had failed to exhaust his administrative remedies. With that motion, the defendants included the affidavit of Angela Hardin, an SCDC Inmate Grievance Administrator. Hardin testifies that the plaintiff filed a Step 1 Grievance on August 4, 2011, relating to the July 26th incident. She also states that the grievance was held in abeyance while a criminal investigation was undertaken by the Division of Investigations, pursuant to SCDC policy. The review was completed on February 7, 2012, and the administrative grievance was now proceeding (Hardin aff. ¶¶ 1-3). On February 24, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On February 27, 2012, the plaintiff filed an affidavit, and on March 8, 2012, he filed a response in opposition to summary judgment. In neither document did the plaintiff dispute that he failed to exhaust his administrative remedies.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

3

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

In their motion for summary judgment, the defendants argue that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they

4

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. It also has the "potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

Following the incident on July 26, 2011, the plaintiff filed a Step 1 Grievance on August 4, 2011. Forty-eight days later, the plaintiff signed his complaint and thereafter delivered the complaint to prison authorities for mailing to the district court, without having waited for a final determination on his grievance. The plaintiff has not received a final determination on his grievance.

It is well settled that "a SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court." *Malik v.*

*Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *3 (D.S.C. March 16, 2010).[2] However, in this case, the plaintiff did not wait for the requisite time period to run prior to filing this action in federal court. Instead, the record clearly reflects that the plaintiff filed this lawsuit just a few weeks after he submitted his first Step 1 grievance. Inmate Grievance Administrator Hardin's testimony is undisputed that the plaintiff's grievance was held in abeyance pursuant to SCDC policy while a criminal investigation of the incident was undertaken by SCDC's Division of Investigations. According to Hardin, now that the investigation has been completed, the plaintiff's Step 1 grievance can proceed, and he will be given a response. As such, the plaintiff's case is premature, as he remains in the administrative grievance process, and has therefore not exhausted his administrative remedies as required by the PLRA. Moreover, the plaintiff does not dispute that he failed to exhaust his administrative remedies, nor does

---

[2] "The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik*, 2010 WL 936777, at *2 n.4. As noted in *Jones v. Kay*, the time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>
> (3) the Warden should respond to the grievant in writing within forty (40) days;
>
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007).

6

he make any claim that his grievance, or a response to it, was refused or improperly delayed. Accordingly, the plaintiff's case is subject to dismissal.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 55) be granted and the plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies.

s/ Kevin F. McDonald
United States Magistrate Judge

June 29, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.